**GULF TAMPA DRYDOCK CO. and Commercial Union Insurance Company, Plaintiffs–Appellees,**

v.

**GERMANISCHER LLOYD, Defendant–Appellant.**

No. 78–2298.

United States Court of Appeals, Fifth Circuit.

Jan. 20, 1981.

Nathaniel G. W. Pieper, Tampa, Fla., for defendant-appellant.

MacFarlane, Ferguson, Allison & Kelly, David F. Pope, Tampa, Fla., for plaintiffs-appellees.

Before TJOFLAT, RUBIN and TATE, Circuit Judges.

TJOFLAT, Circuit Judge:

In this admiralty case, the district court below found Germanischer Lloyd, a ship classification society,[1] liable in contribution to Gulf Tampa Drydock Company (Tampa Drydock)[2] for damages arising from a fire aboard the cargo ship CAP NORTE on a theory of concurrent negligence. (Tampa Drydock had been found negligent and thus liable to the owners of the CAP NORTE in

---

1. A ship classification society is an organization that (1) sets standards for the quality, integrity and seaworthiness of ocean-going vessels; and (2) after inspecting a vessel, classifies it as conforming to those standards. Generally, insurance companies require that a vessel be classified before it will insure it.

2. Commercial Union Insurance Company, Tampa Drydock's insurer, is subrogated to Tampa Drydock's rights against Germanischer Lloyd, and is, along with Tampa Drydock, a plaintiff-appellant in this action.

an earlier proceeding.)[3] Germanischer Lloyd asks that the district court decision be reversed. The company has raised two issues of law: whether collateral estoppel should preclude liability and whether the duty a classification agency owes to the owners of a ship it classifies is an adequate foundation of liability in the present case. Because we think the district court failed to consider the question of what duty Germanischer Lloyd owed to the owners of the CAP NORTE, we reverse and remand to the district court for findings on this issue.

## I

### The Facts

On July 12, 1968, the CAP NORTE, en route to New York, sustained a deck plating fracture near Tampa, Florida. Germanischer Lloyd, the CAP NORTE's classification society, was notified of the damage to the ship. Soon thereafter, a representative of Germanischer Lloyd, Captain F. H. Young, examined the fracture, and determined that the CAP NORTE needed repairs to remain in class.

Representatives of the CAP NORTE disagreed. After some discussion, however, it became evident that Captain Young would not allow the CAP NORTE to remain in class unless temporary repairs were made before the ship embarked for New York. The CAP NORTE representatives thus reluctantly agreed to pay for those repairs Captain Young deemed necessary to mend the fracture, and selected Tampa Drydock to undertake them. The representatives warned Captain Young that special care would have to be taken in making the repairs because of inflammable insulation materials in the area of the fracture.

Without securing detailed diagrams, which were in Germany, of the ship's structure, Captain Young ordered Tampa Drydock to repair the fracture by welding steel bars across it. Tampa Drydock proceeded to do so, but apparently erred in selecting the welding spots. As a result, Tampa Drydock negligently welded the bars against inflammable materials, causing a fire that damaged both ship and cargo.

The owner of the CAP NORTE ("shipowner") sued Tampa Drydock in federal district court ("Case 1"). In that action, Tampa Drydock alleged a number of defenses, including that of the shipowner's superseding negligence. Under this theory, the Germanischer Lloyd representative was acting as the shipowner's agent, and thus his alleged negligence in ordering and supervising the repairs was attributable to the shipowner. Although no express finding of negligence or agency was made by the district court, judgment was entered for the shipowner. We believe the court's determination that Tampa Drydock was liable without any reduction in liability for negligence of the shipowner necessarily means it found either that Captain Young was not the shipowner's agent *or* that although he was the shipowner's agent, he was not negligent.

Subsequent to the entry of judgment in Case 1, Tampa Drydock brought the present action against Germanischer Lloyd for contribution. Here, Tampa Drydock contends that Germanischer Lloyd is responsible for the negligence of its employee, Captain Young, in ordering, supervising and inspecting the repairs to the CAP NORTE. Germanischer Lloyd responded in the proceeding below that Captain Young had not been negligent, but even had he been, a finding of liability would be improper for two reasons: (1) the issue of Germanischer Lloyd's negligence was decided against Tampa Drydock in Case 1, which collaterally estops relitigation of the issue here; and (2) Germanischer Lloyd owed no duty to the shipowner to direct, supervise or inspect repairs, and thus could not be a joint tortfeasor. The district court disagreed, and held Germanischer Lloyd liable for 50% of the damages that Tampa Drydock was ordered to pay in Case 1. The court's assignment of liability was based on its conclusion that Captain Young's failure to obtain sufficient

---

3. *Hamburg–Sudamerikanische Dampfschiff-ahrts–Gesellschaft Eggert & Amsinck v. Gulf Tampa Drydock Co.,* No. 71–335 (M.D.Fla. June 29, 1973).

pre–repair information, and his direction that steel bars be welded across the fracture, were negligent.

On this appeal, Germanischer Lloyd argues that the district court's conclusions on the issues of collateral estoppel and duty were in error. For reasons we explain below, we hold the collateral estoppel defense inapplicable. We think, however, that the district court failed to determine whether Germanischer Lloyd, through the actions of Captain Young, did in fact breach any duty it owed to the shipowner. Without a breach of such duty, Germanischer Lloyd should not have been found liable to the shipowner, and Tampa Drydock would be foreclosed from suing for contribution. We thus reverse and remand for a finding on this issue.

## II

### Collateral Estoppel

We have described the doctrine of collateral estoppel as follows:

> Any right, fact or matter in issue and directly adjudicated, or necessarily involved in the determination of an action before a competent court in which a judgment or decree has been rendered upon the merits, is conclusively settled by the judgment therein and cannot again be litigated between the same parties . . . whether the claim, demand, purpose or subject matter of the two suits is the same or not.

*In Re Constructors of Florida, Inc.*, 349 F.2d 595, 599 (5th Cir. 1965), *cert. denied*, 383 U.S. 912, 86 S.Ct. 886, 15 L.Ed.2d 667 (1966).

Germanischer Lloyd contends that Tampa Drydock litigated the issue of Germanischer Lloyd's negligence in Case 1, and is bound by the adverse determination rendered therein.[4] In support of its position, Germanischer Lloyd observes that Tampa Drydock tried to excuse itself from liability in Case 1 by arguing, *inter alia*, that it performed repairs in the manner directed by Germanischer Lloyd and, that if the repairs were negligently undertaken, the negligence was at least shared by Germanischer Lloyd. Germanischer Lloyd points particularly to the pretrial stipulation which listed as issues to be litigated whether

> " . . . in performing the welding services was Gulf–Tampa Drydock Company following the instructions of the vessel classification society surveyor, not only as to what was to be done but also as to how it should be done; is vessel interest bound by the instructions of the classification society survey or as to repairs and the manner of effecting same; is vessel interest estopped to recover from Gulf Tampa by reason of the actions of . . . its classification society surveyor . . . "

Record Excerpts, Vol. I at 46. Moreover, Germanischer Lloyd contends that the court resolved these issues in its favor by finding as fact that "the precise spotting or location of each of the straps which were used in connection with the tempoary repair . . . was determined by Gulf Tampa . . . " Record Excerpts, Vol. I at 32.

We cannot agree that this finding necessarily forecloses the matter. Germanischer Lloyd's alleged negligence was relevant to the first case only insofar as it could be attributed to the shipowner, for it would be the shipowner's contributory negligence,

---

**4.** The rule stated in *Constructors of Florida* bars relitigation of an issue between the *same* parties. Since Germanischer Lloyd was not a party to Case 1, collateral estoppel would not seem to bar relitigation of the issue. In *Rachal v. Hill*, 435 F.2d 59 (5th Cir. 1970), *cert. denied*, 403 U.S. 904, 91 S.Ct. 2203, 29 L.Ed.2d 680 (1971), however, we abandoned the strict mutuality requirement, and said we would "preclude a party from relitigating an issue decided against him in a prior action, even if the party asserting the estoppel was a stranger to the prior action," *id.* at 62, "unless it appears that the party against whom the estoppel is asserted [did not have] a full and fair opportunity to litigate the issue in the prior proceeding and that application of the doctrine [would] result in an injustice to the party against whom it is asserted under the particular circumstances of the case." *Id.* at 62. *See Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *Parklane Hosiery Co. v. Shores*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

and not Germanischer Lloyd's concurrent negligence, that would have excused Tampa Drydock from liability or reduced the extent of Tampa Drydock's liability. This was recognized in the pretrial stipulation that set forth as a triable issue whether "the vessel interest [was] bound by the instructions of the classification society," or, in other words, whether the classification society was acting as the shipowner's agent. Record Excerpts, Vol. I at 42. Thus, the district court needed to face the issue of Germanischer Lloyd's negligence only if it first concluded that Germanischer Lloyd was in an agency relationship to the shipowner. If the district court concluded that an agency relationship did not exist, it would not have been called upon to determine whether Germanischer Lloyd was in fact negligent.

As recounted in Part I of this opinion, the district court memorandum in Case 1 made no specific finding concerning either negligence or agency. Thus, we are unable to say from reading the opinion alone whether the district court reached the issue of negligence; rather, it may have determined that Germanischer Lloyd's actions were not attributable to the shipowner, and thus that the possibly negligent character of the actions was not germane to the question of Tampa Drydock's liability.

■ When an opinion does not clearly reveal what issues were litigated in a case, a party seeking in a subsequent case to have the first case operate as a collateral bar to the litigation of an issue has the burden of producing extrinsic evidence demonstrating that the court in the first case reached and resolved the issue. Restatement of Judgments § 68, Comment k (1942). We think the district court's determination that Germanischer Lloyd failed to prove that the negligence issue was decided in the first case is adequately supported by the record.[5] Therefore, the defense of collateral estoppel is not applicable.

5. Although not relevant to our review of the district court's disposition of the collateral estoppel issue, it is worth noting that Judge Will-

## III

### Duty

To prevail in an action for contribution, Tampa Drydock must demonstrate that Germanischer Lloyd was a joint tortfeasor, i. e., jointly or severally liable in tort to the shipowner for the damage to the ship. For a classification society to be liable to a shipowner "under theories of tort law, the obvious question is, what duties are owed by a classification society to its clientele?" *Great American Insurance Co. v. Bureau Veritas*, 338 F.Supp. 999, 1011 (S.D.N.Y. 1972), aff'd, 478 F.2d 235 (2d Cir. 1973). Germanischer Lloyd contends that, as a classification society, it owed no relevant duty to the shipowner, and thus could not be liable.

■ A classification society owes certain duties to a shipowner. Those duties include the determination that a ship conforms to certain standards of seaworthiness set by the society. This was explained at the trial below by a general marine surveyor testifying for Tampa Drydock:

"[T]he function of a classification society [is] to set rules and standards ... such that ... vessels be reasonably and solely operated in their respective societies.

The classification societies then demand the ships be ... subjected to inspections ..., and that the rules and standards are still kept in force."

Record, Vol. II at 199.

An additional classification society duty is inspection of damaged ships to determine whether they continue to meet class standards, and if not, what must be undertaken to bring the ship back up to class standards. Record, Volume II at 200. This was the role Germanischer Lloyd and Captain Young were performing for the CAP NORTE.

Germanischer Lloyd's position is that a classification society's responsibilities are limited by custom and contract. Thus, Ger-

son presided over the first case as well as the case before us.

manischer Lloyd argues that its role in inspecting damaged ships and recommending repairs, by definition, is limited, and, more precisely, does not extend to the directing or ordering of specific types of repairs. Therefore, the company contends that if Captain Young voluntarily assumed these broader responsibilities and then negligently fulfilled them, he would have exceeded the scope of his employment as a Germanischer Lloyd surveyor, and Germanischer Lloyd could not be held responsible. Moreover, Germanischer Lloyd argues that its contract with the shipowner, which expressly excuses it from liability resulting from acts or omissions of its surveyors, is an additional ground for precluding its liability.

The district court did not focus on whether Captain Young's actions breached any duty Germanischer Lloyd owed to the shipowner; neither the court's findings of fact nor conclusions of law address the issue. If a classification society has no duty to a shipowner to direct how repairs are to be made, it may well be that Captain Young's directions, or his failure to gather background information sufficient to formulate proper directions, even if negligent, would not put Germanischer Lloyd in breach of any relevant duty. It is not, however, our role as an appellate court to sift through the record and draw conclusions concerning what duties a classification society owes its clients under the circumstances presented by this case. We thus remand to the district court for a determination of whether any duty Germanischer Lloyd owed to the shipowner was violated by Captain Young's actions. In making this determination, the district court should consider the effect, if any, of the exculpatory contractual clause.

VACATED AND REMANDED.