**CONTINENTAL INSURANCE CO. for and on Behalf of itself and other interested underwriters**

v.

**DAEWOO SHIPBUILDING & HEAVY MACHINERY LTD., Daewoo Shipbuilding and American Bureau of Shipping.**

**No. 86 Civ. 5255 (RLC).**

United States District Court, S.D. New York.

July 18, 1988.

Chalos, English & Brown New York City, for plaintiff (Michael G. Chalos and Peter Skoufalos, of counsel).

Philip J. Curtin, New York City and Sarah M. Barton, Adams & Barton, Paramus, N.J., for defendants.

## ENDORSEMENT

ROBERT L. CARTER, District Judge.

This case involves water damage to cargo shipped aboard the M/V American New York on its maiden voyage. Defendant Daewoo Shipbuilding & Heavy Machinery Ltd. ("Daewoo"), builder of the vessel, contracted with defendant American Bureau of Shipping ("ABS"), a classification society, to review specifications for the vessel, survey it, and certify its compliance with Rules promulgated by ABS. Plaintiffs, who are subrogated to the claims of the cargo owners, allege that ABS owed users of the vessel a duty to discover the defect which caused leakage, and breached that duty. Six weeks before the trial date, with leave of the court, ABS moved for summary judgment dismissing all claims and cross-claims against it. Daewoo does not oppose the motion.

The alleged defect involved the sealing of a watertight manhole cover on one of the vessel's ballast tanks. On January 27, 1984, an ABS surveyor observed the testing of the tank and confirmed that it was waterproof. Subsequently, employees of Daewoo unsealed the manhole cover to complete the painting of the tank. When the vessel arrived at the port of Savannah, it was discovered that the cover's gasket was missing and the sealing nuts were loose.

Plaintiffs do not claim that ABS's January 27 survey was negligent, or that the manhole cover was not designed or constructed in accordance with ABS standards, but only that ABS was remiss in not re-inspecting the manhole cover subsequently. Plaintiffs cite no authority, however, in support of the conclusion that ABS breached a duty of care or an implied warranty of workmanlike performance. ABS's duty is delimited by its contract with Daewoo. The terms of its contract required it only to exercise due care in reviewing design and

surveying construction before certifying that the vessel met ABS standards. It was required to certify not to the absolute seaworthiness of the vessel, but only to the vessel's conformity to ABS Rules. *See Gulf Tampa Drydock v. Germanischer Lloyd,* 634 F.2d 874, 878 (5th Cir.1981) (classification society's duty is to determine that ship conforms to standards set by society); *Steamship Mutual Underwriting Assoc. Ltd. v. Bureau Veritas,* 380 F.Supp. 482, 488 (E.D.La.1973) (negligence of classification society limited to failure to conform to its own rules), *aff'd,* 494 F.2d 1352 (5th Cir.), *cert. denied,* 419 U.S. 1070, 95 S.Ct. 657, 42 L.Ed.2d 666 (1974).

For ABS to certify (or "class") a vessel constitutes (to quote the relevant ABS Rule) "a representation by [ABS] as to the *structural and mechanical fitness* for a particular use or service in accordance with its Rules and standards." Barton Aff't, Ex. 1R, § 1.3 (emphasis added). The structural or mechanical fitness of the manhole cover, however, is not in issue; plaintiffs claim only that it was improperly sealed. To extend a classification society's duty to the operational details of the vessel's management would both ignore the clear limits of its contractual duty and make it an absolute insurer of the vessel. *Great American Ins. Co. v. Bureau Veritas,* 338 F.Supp. 999, 1012 (S.D.N.Y.1972) (Tyler, J.), *aff'd,* 478 F.2d 235 (2d Cir.1973). This the court declines to do.

Plaintiffs have not raised a triable issue as to whether the presence of ABS representatives on board during the vessel's sea trials created a duty to discover every operational defect that may have existed at that time. The mere fact of a surveyor's presence for purposes of observation does not give rise to so sweeping a duty. Nor may plaintiffs defeat this motion by relying on the fact that the ball-float of the tank's sensor device was found stuck to the deck with paint. They have failed to come forward with evidence on two essential elements of this claim: first, that ABS had certified the fitness of the sensing device in violation of its Rules and standards, and second, that ABS's certification was the proximate cause of the damage. (The evidence of record shows, indeed, that a back-

up sensor was operational. Skoufalos Aff't, Ex. D.) This failure of proof mandates judgment against the non-moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Plaintiffs' remaining arguments go solely to the question of whether the defects were discoverable, and thus beg the question of ABS's duty altogether.

There is no genuine issue as to the fact that ABS conformed to its Rules and standards in surveying the manhole cover. However, despite the proximity of trial, plaintiffs have not yet had the opportunity to depose two of Daewoo's witnesses. These witnesses are to be produced the week before trial. Disposition of this matter will therefore await the conclusion of discovery. *See Celotex,* 106 S.Ct. at 2552–53 (summary judgment appropriate only "after adequate time for discovery"). On the first day of trial, the court will entertain any newly-discovered evidence that ABS's undertaking in connection with the vessel was greater in scope than the evidence thus far indicates. In the absence of such evidence, ABS's motion will be granted at that time.

IT IS SO ORDERED.