**CARGILL INCORPORATED, Cargill International S.A., Andre and CIE S.A., Frahuil S.A., Vandemoortele, Paksoy Ticaret ve Sanayia A.S., Madra Akin Yagcilik Ve Sabonculuk A.S. and Contimpex S.A., Plaintiffs,**

v.

**Bureau VERITAS, Defendant.**

**No. 92 Civ. 5889 (JES).**

United States District Court, S.D. New York.

Oct. 18, 1995.

Varet & Fink, New York City (Stanley McDermott, III, Peter M. Corrigan, of Counsel), O'Neil, Eichin, Miller, Breckinridge & Saporito, New Orleans, Louisiana (John F.

Fay Jr., Machale A. Miller, of counsel), for Plaintiffs.

Hughes, Hubbard & Reed, New York City (Steven A. Hammond, Ross Limpman, of counsel), for Defendant.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiffs Cargill Incorporated, Cargill International S.A., Andre and Cie S.A., Frahuil S.A., VandeMoortele,[1] Paksoy Ticaret Ve Sanayia A.S., Madra Akin Yagcilik ve Sabonculuk A.S. and Contimpex S.A. (collectively, "plaintiffs") bring the instant maritime action to recover monetary damages of $2.35 million. Defendant Bureau Veritas moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(c) on the basis that a classification society is not liable as an insurer of a vessel's seaworthiness and that plaintiffs neither actually nor reasonably relied on defendant's classification of the vessel M/T PACIFIC DAWN ("Pacific Dawn").[2] For the reasons that follow, defendant's motion is granted.

## BACKGROUND

Bureau Veritas, a classification society, develops rules for the classification of ships and conducts periodic surveys to ensure the satisfaction of requirements for specified classes. *See* Affirmation of Steven Hammond dated Nov. 12, 1993, R.D. # 14, ("Hammond Aff."), Ex. A, BV Rules and Regs., ("Ex. A"), Art. 1.1. A shipowner contracts with Bureau Veritas to classify its vessel in accordance with Bureau Veritas' rules and to publish the ship's name and other pertinent information in Bureau Veritas' Register. *See id.,* Art. 3.

Bureau Veritas' rules provide that classifying a ship does not warrant the vessel's seaworthiness. Rather, classification only represents that the ship satisfies Bureau Veritas' rules.[3] *See id.,* Art. 5.2. Bureau Veritas conducts periodic surveys of ships in service to ensure that a ship continues to meet its class requirements. *See* Hammond Aff., Ex. A, Art. 3. A ship's owner may request that Bureau Veritas supplement its classification by issuing an "attestation of class" based upon the most recent information regarding the ship's classification. *See* Hammond Aff., Ex. A, § 2.17 n. 2. Bureau Veritas also publishes periodic supplements updating the Register. *See* Affirmation of Peter M. Corrigan, dated Jan. 21, 1994, R.D. # 20 ("Corrigan Aff."), Ex. 7; Affirmation of Kevin M. Crotty, R.D. # 25 ("Crotty Aff."), Ex. A, Portions of Periodic Supplements. However, the Register does not indicate whether a ship's class has been suspended. *See* Hammond Aff., Ex. A, § 2.17.18.

According to Bureau Veritas' rules, a particular class certification is valid for a five year term, after which Bureau Veritas conducts a "special survey" for a new term. *See id.* §§ 1.11.23, 2.12.11, 2.11.14. The special survey of all of the equipment can be conducted simultaneously or, at the vessel owner's request, on a continuous basis. When conducting a special survey on a continuous basis, Bureau Veritas surveys various parts of the machinery covered by the class notation at least once during the term, and the

---

1. Although the complaint caption uses the spelling "VandeMoortele," other documents filed by plaintiffs and defendant in the action employ the spelling "Van De Mortele."

2. An additional party not included in the caption of the complaint or elsewhere in the action, Pasternak and Baum Co., Inc., joins in plaintiffs' memorandum of law in opposition to the motion for summary judgment. Upon representation by plaintiffs' attorney that Pasternak and Baum Co., Inc. is not a party to the instant action, the Court disregards its joinder in the motion.

3. Bureau Veritas' rules provide:

> Nothing contained ... in any information, report, certificate or like document ... shall be deemed to relieve any ... repairer, or owner, operator or other entity from any warranty or other contractual obligations express or implied or from any fault whatsoever, nor to create any right, claim or benefit in any third party.

Hammond Aff., Ex. A, Art 5.3. Bureau Veritas' rules define classification as:

> [T]he expression of confidence given by the Society to a ship, for a particular use or service and for a certain period of time, by reference to its Rules, Guidance Notes and other documents: this opinion expresses only the strict personal view of the society.

*Id.,* Art. 2.1.

interval between two consecutive surveys of each component must not exceed five years.[4] *See id.* § 2.12.21.

Bureau Veritas' rules provide that a classification certificate may contain recommendations when repairs are temporarily postponed or when re-examination is necessary. Bureau Veritas attaches such recommendations to the classification certificate in the form of a "visa." *See id.* §§ 2.11.19, 2.11.12. According to Bureau Veritas' rules, these certificates with attached visas are "the only authentic information about the class of the ship." *Id.* § 2.11.12.

The owner of the Pacific Dawn, Great Bear Shipping Company ("Great Bear"), hired Bureau Veritas as the classification society for Pacific Dawn, a vessel of Bahamian registry managed by Stamford Tankers, Inc. ("Stamford Tankers"). *See* Defendant's Statement of Undisputed Facts Pursuant to Local Rule 3(g), R.D. # 16, ("Def. 3(g) Stmt.") ¶ 12. Plaintiffs are cargo owners, shippers and consignees of vegetable oil that was loaded on Pacific Dawn for transportation to various European ports. *See id.* ¶ 14; *Cargill Inc. v. M/T Pacific Dawn,* 876 F.Supp. 508 (S.D.N.Y.1995). As a custom and practice, plaintiffs hire for cargo shipment only vessels registered with a recognized classification society. *See* Corrigan Aff., Ex. 4, Randy Stuewe Affidavit, dated Jan. 18, 1994 ("Stuewe Aff. I").

Prior to the events at issue, Bureau Veritas surveyed the Pacific Dawn in Italy and issued Visa No. 4, which postponed the survey of certain overdue continuous survey items and recommended the portside diesel generator be permanently repaired by February 15, 1992. *See* Hammond Aff., Ex. N, at 1020, Visa No. 4. On February 28, 1992, Pacific Dawn departed Spain and arrived in Beaumont, Texas on March 24, 1992, after having suffered repeated breakdowns and scavenge fires en voyage. *See* Corrigan Aff., Ex. 5, Extracts from Ship's Deck Log at 16–17. On or about March 27, 1992, Pacific Dawn arrived in Houston, Texas. *See id.* at 17. On March 31, 1992, Bureau Veritas is-

sued Visa No. 5 to Pacific Dawn, which postponed the expiration date for the survey of overdue continuous survey items another week, until April 7, 1992, and specified that the portside diesel generator be permanently repaired by the same date. *See* Hammond Aff., Ex. N, at 1020, Visa No. 5.

After departing Houston en voyage to New Orleans, Louisiana, on April 3, 1992, Pacific Dawn was forced to dock in Galveston, Texas due to machinery failure. The ship remained docked there until April 8, 1992. During its voyage from Galveston to New Orleans, Pacific Dawn suffered another scavenge fire. *See* Corrigan Aff., Ex. 28, Ship's Deck Log; Corrigan Aff., Ex. 5, Extracts from Ship's Deck Log at 18. On or about April 11, 1992, Pacific Dawn arrived at New Orleans. Visa No. 5 had extended the overdue continuous survey items and repair of portside generator only until April 7, 1992. *See* Hammond Aff., Ex. N at 1020, Visa No. 5. Bureau Veritas' rules provide that where a ship is at sea on the last date for a survey, the survey becomes overdue on the day of the ship's arrival in port, *see id.,* Ex. A, § 2.1.17, which in this case was either April 8, 1992, when the ship docked at Galveston, or at best April 11, 1992, when it arrived at New Orleans. Between April 14 and April 17, 1992, while docked in New Orleans, the cargo at issue was loaded on board Pacific Dawn, after the classification certificate for machinery items had expired. *See id.;* Hammond Aff., Ex. N at 1020, Visa No. 5.

On May 26, 1992, Bureau Veritas surveyor Geoffrey Webster, after examining the portside generator and witnessing test runs, *see* Hammond Aff., Ex. E at 157–58; Ex. O at 1140, issued a "Detailed Report of Survey," Visa No. 6 and Visa No. 7. The Detailed Report of Survey indicated that all continuous survey machinery items had been put into satisfactory condition. *See id.,* Ex. O at 1138, 1141–44. Visa No. 6 specified that "permanent repairs to No. 2 generator [had been] dealt with." *Id.,* Ex. N at 1020, Visa No. 6. Visa No. 7 specified recommenda-

---

4. Bureau Veritas' rules provide that the intervals between surveys may be changed due to special circumstances, *see id.* §§ 2.12.15, 2.12.21, and

that the stringency of a special survey depends on the condition of the ship under inspection.

**52**

tions to be addressed at the ship's next port of call. *See id.*, Visa No. 7.

Hours after departing New Orleans on June 1, 1992, Pacific Dawn was forced to cast anchor due to smoke in the engine room. *See id.*, Ex. B at 167–68, 191–95; Ex. C at 37–39; Corrigan Aff., Ex. 5, Extracts from Ship's Deck Log at 18. Repairs were made to the ship between June 1 and June 4, 1992 by the crew and American Diesel, an independent ship repair company. *See* Hammond Aff., Ex. B, Sekachev Deposition ("Sekachev Dep.") at 168, 200–03, 324; Ex. C, Pavlov Deposition ("Pavlov Dep.") at 37–39; Corrigan Aff., Ex. 5, at 18–19. Bureau Veritas was neither invited to attend or survey the repairs, nor even advised of these repairs until after the vessel was later towed back to New York, *see* Hammond Aff., Ex. E, Webster Deposition ("Webster Dep.") at 166, notwithstanding the fact that Pacific Dawn's chief engineer characterized the services as "major repairs." *See* Sekachev Dep. at 324. On June 3, 1992, plaintiffs hired an independent company, South Marine Limited, to survey Pacific Dawn. *See* Crotty Aff., ¶ 3, Ex. B.

On June 15, 1992, the main engine stopped because of fires in its scavenge spaces. *See* Hammond Aff., Ex. B at 271–72, 285–86. The engine could not be restarted, purportedly because the portside generator had developed problems. *See id.* at 287–90. The ship was unable to continue its journey and therefore, was towed to New York on June 22, 1992. *See* Def. 3(g) Stmt., ¶¶ 42–43; Plaintiffs' Statement of Disputed Facts Pursuant to Local Rule 3(h), R.D. # 21 ("Plaintiffs' 3(h) Stmt."), ¶¶ 42–43. On August 21, 1992, Bureau Veritas suspended class for Pacific Dawn retroactive to June 1, 1992. *See* Corrigan Aff., Ex. 12.

Plaintiffs bring this civil and admiralty action asserting that Bureau Veritas, by classifying Pacific Dawn, owed plaintiffs a duty to ensure the seaworthiness of Pacific Dawn and breached that duty by failing to revoke classification and by making certain misrepresentations. For the reasons that follow, Bureau Veritas' motion for summary judgment dismissing the complaint must be granted.

## DISCUSSION

In the first and second causes of action, plaintiffs claim that by classifying Pacific Dawn, Bureau Veritas warranted Pacific Dawn's seaworthiness. It is well-established that a classification society is not liable to a shipowner as an insurer of the seaworthiness of a vessel. *See Sundance Cruises v. Am. Bureau of Shipping*, 7 F.3d 1077 (2d Cir. 1993); *Great Am. Ins. Co. v. Bureau Veritas*, 338 F.Supp. 999, 1012 (S.D.N.Y.1972), *aff'd*, 478 F.2d 235 (2d Cir.1973), *cert. denied*, —— U.S. ——, 114 S.Ct. 1399, 128 L.Ed.2d 72 (1994). To deem a classification society as a warrantor of a vessel's seaworthiness would create a liability which is not commensurate with a classification society's limited control over a vessel, the intent of the parties, the fees charged for classification or the services performed. *See Great American*, 338 F.Supp. at 1012. The same rationale compels the conclusion that, by classifying a vessel, a classification society is also not liable as an insurer of a vessel's seaworthiness to third party cargo owners, such as plaintiffs. *See Continental Ins. Co. v. Daewoo Shipbuilding & Heavy Mach. Ltd.*, 707 F.Supp. 123, 124 (S.D.N.Y.1988), *aff'd*, 888 F.2d 125 (2d Cir.1989).[5] Therefore, plaintiffs' first and second causes of action must be dismissed.

In the remaining two causes of action, plaintiffs claim that, by negligently inspecting the vessel and failing to revoke its class, Bureau Veritas negligently misrepresented that the Pacific Dawn was fit for sail. Where, as here, plaintiffs are third party cargo owners who claim to have been injured by relying upon a ship's classification certificates, a cause of action may exist for negligent misrepresentation. However, plaintiffs cannot recover on a claim of negligent misrepresentation unless they establish that they actually and reasonably relied on the certificates issued by Bureau Veritas. *See Sundance*, 7 F.3d at 1084; *see also Glanzer v. Shepard* 233 N.Y. 236, 135 N.E. 275 (1922); *Ultramares Corp. v. Touche*, 255 N.Y. 170,

**5.** *See* n. 3, *supra.*

174 N.E. 441 (1931). Specifically, plaintiffs must show that Bureau Veritas

> (1) at [the] plaintiff[s'] request supplied information for [their] guidance; (2) failed to use reasonable care in so doing; (3) knew plaintiff[s] would rely on the information for particular purposes; and (4) plaintiff[s] suffered an economic loss because [they] relied on the information.

*Sundance Cruises Corp. v. Am. Bureau of Shipping,* 799 F.Supp. 363, 382 (S.D.N.Y. 1992), *aff'd,* 7 F.3d 1077 (2d Cir.1993).

However, plaintiffs cannot establish that they actually relied on Bureau Veritas' classification of the Pacific Dawn. The record is devoid of any evidence that plaintiffs even consulted Bureau Veritas' Register classifying the Pacific Dawn.[6] Moreover, since plaintiffs hired their own independent surveyor, South Marine Limited, to survey Pacific Dawn one week after Bureau Veritas last surveyed the ship, no inference can reasonably be drawn that plaintiffs relied on Bureau Veritas' survey. This is especially true since South Marine survey was performed after the ship had undergone major repairs between June 1 and June 4, 1992, prior to its departure from the Mississippi River. *See* Crotty Aff. ¶ 3; Ex. B; Sekachev Dep., at 167–68, 192–95, 200–03, 324. Moreover, Bureau Veritas was not even aware of the major repairs performed on Pacific Dawn until after the ship was towed to New York, *see* Webster Dep. at 166, and thus cannot have willfully or negligently failed to represent this fact of which it was concededly unaware.

Nor could any reliance by plaintiffs on Pacific Dawn's listing on the Bureau Veritas Register as a representation of the ship's current class status have been reasonable even assuming, *arguendo,* that such reliance occurred. The Bureau Veritas Register does not reflect whether Bureau Veritas has suspended a ship's class but only a ship's condition at the time of the survey. *See* Hammond Aff., Ex. A, § 2.17.18. Had they wanted to ascertain the current status of the Pacific Dawn, plaintiffs could have requested specific information survey called an "attestation of class." *See* Crotty Aff., Ex. A, Art. 2.2; Hammond Aff., Ex. A § 2.17 n. 2; *Whitehorse Marine Inc. v. Great Lakes Dredge & Dock Co.,* 751 F.Supp. 106, 109 (E.D.Va. 1990).[7] However, prior to loading the cargo aboard, plaintiffs failed to request an attestation of class, assurance that its certificates were free and clear of recommendations for repairs, or any other information from Bureau Veritas concerning the current status of Pacific Dawn.

■ Even if plaintiffs had requested such an attestation, Bureau Veritas would have been unable to certify that all survey items were current because the most recent visa had expired prior to the date plaintiffs loaded their cargo aboard Pacific Dawn. At the time plaintiffs' cargo was loaded aboard Pacific Dawn, on or about April 14 through April 17, 1992 in New Orleans, the ship's classification Visa No. 5 had extended the overdue continuous survey items and repair of portside generator items only until April 7, 1992 and thus it had expired no later than when the vessel arrived in New Orleans.[8] Moreover, several of the vessel's statutory certificates, including the safety construction certificate, had expired on April 10, 1992. *See* Hammond Aff., Ex. L at 1208. It is clear, therefore, that plaintiffs cannot demonstrate that Bureau Veritas "knew plaintiff would rely on the information for particular purposes[.]" *Sundance,* 799 F.Supp. at 382. Indeed, "there is not ... a scintilla of evidence ... that plaintiff[s] had asked defen-

---

**6.** Plaintiffs claim that actual reliance is evidenced by the fact that the charter agreement between Great Bear and several plaintiffs provides that the vessel was classified by Bureau Veritas. However, the placement of "Bureau Veritas" beside the word "Classed" on the charter agreement, *see* Corrigan Aff., Ex. 2, can only reasonably be construed as a representation by the owner of the vessel, Great Bear, not Bureau Veritas.

**7.** Plaintiffs' demand for an attestation of class from Bureau Veritas would have been made through the shipowner, Great Bear. Bureau Veritas' Rules provide that "when requested by the Owner, an attestation of class may be issued by the Society based on the information in the ship's records at the time of the issuance of attestation." Hammond Aff., Ex. § 2.17 n. 2.

**8.** *See* n. 3, *supra.*

dant to provide [them] with any information for [their] guidance." *Id.* It follows that plaintiffs claim for negligent misrepresentation must be dismissed.[9]

## CONCLUSION

For the reasons stated above, summary judgment for defendant is granted. The Clerk of Court is directed to enter such judgment and close the above-captioned action.

It is **SO ORDERED.**

---

**9.** It is clear that plaintiff cannot show that Bureau Veritas failed to use reasonable care in classifying Pacific Dawn. A classification society's duty is to use due care to determine whether the vessel conforms with its standards and rules. *See Continental Ins. Co.,* 707 F.Supp. at 124. There is no factual basis to support any claim that Bureau Veritas failed to follow its own rules and regulations, which allow Bureau Veritas to extend the time between surveys.