United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 29, 2004**

Charles R. Fulbruge III
Clerk

**REVISED, MAY 28, 2004**
**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 03-60246**

_____

**CONAGRA, INC.**

**Plaintiff-Appellant,**

**versus**

**COUNTRY SKILLET CATFISH COMPANY, ET AL.,**

**Defendants-Appellees.**

**Appeal from the United States District Court**
**for the Northern District of Mississippi,**
**Greenville Division**
**No. 4:00CV246-M-B**

Before GARWOOD, JONES, and STEWART Circuit Judges.

EDITH H. JONES, Circuit Judge:[*]

This case arises from the sale of a Mississippi catfish
business to a group of investors. In conjunction with the sale,
ConAgra also temporarily "leased" certain employees to the divested
subsidiary. ConAgra filed suit for breach of these agreements.
The district court, however, found primarily against ConAgra. For

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this
opinion should not be published and is not precedent except under the limited
circumstances set forth in 5TH CIR. R. 47.5.4.

the reasons set forth below, we affirm in part and reverse in part the district court's judgement.

## I.   BACKGROUND

From 1971 through 1990, ConAgra owned a catfish processing business in Mississippi and operated the business through an unincorporated division known as Country Skillet Catfish Company ("Country Skillet").[1]  From 1991 until December 18, 1996, ConAgra operated the catfish processing business as a joint venture between its subsidiary, Country Skillet, and Fishco, Inc. ("Fishco").  This joint venture was operated through a company known as Confish, Inc. ("Confish").[2]  Confish's profits and losses were shared equally between Country Skillet and Fishco throughout the course of the joint venture.

During that time, ConAgra paid the payroll and benefits expenses for Confish's salaried and hourly employees, which Confish regularly reimbursed.  Although this arrangement was informally referred to between the parties as a "lease" of the employees, no lease agreement, written or otherwise, ever existed. Additionally, from 1971 until December 18, 1996, ConAgra provided pension benefits to its salaried employees, but not to its hourly employees.  On December 18, 1996, ConAgra sold 100% of its Country

---

[1]   In 1991, Country Skillet was incorporated as a wholly-owned subsidiary of ConAgra.

[2]   Confish is now known as Consolidated Catfish Companies, LLC, and Country Skillet has changed its name to Country Select Catfish Company.  However, for clarity's sake, we refer to these companies collectively as Confish.

Skillet stock to Richard Stevens, Tom Reed, and Mitchell Pearson pursuant to a Stock Sale Agreement ("Sale Agreement"). The parties also entered into a formal employee leasing agreement ("Leasing Agreement"), which was incorporated into the terms of the Sale Agreement.

The Leasing Agreement had a maximum three-year term and provided that all of the Confish personnel, both salaried and hourly, would remain ConAgra employees for its duration. In the Leasing Agreement, Confish agreed to reimburse ConAgra for certain employee-related expenses, including employee compensation and the "costs" of fringe benefits. The Leasing Agreement also permitted the parties to terminate the agreement early.[3] Both the Sale and Leasing Agreements were negotiated primarily between Dwight Goslee, a senior executive at ConAgra, and Stevens.

Simultaneously, ConAgra was also negotiating a new Collective Bargaining Agreement ("CBA") for the Confish hourly employees with the local United Food & Commercial Workers union ("UFCW"). During the course of these negotiations, Tom Baumgardner, ConAgra's union negotiator, contacted Don Winters,

---

[3] The Leasing Agreement provided:

It is specifically understood and agreed that Lessor shall have the right to immediately terminate this Agreement in the event Country Skillet defaults under the Promissory Note or defaults under or breaches any terms or conditions provided herein. In the event of any such termination, this Agreement will continue to govern the parties' rights and obligations with respect to services performed prior to the date of termination.

ConAgra's Director of Employee Benefits, regarding a proposal to include past and current pension benefits to the Confish hourly employees in the new CBA. Winters investigated the cost of providing these benefits and provided the information to Baumgardner. On March 19, 1997, Confish and UFCW executed a CBA that included past and current pension benefits for the hourly employees.

Surprisingly, Goslee never contacted Winters about the impending sale of Country Skillet, nor did he offer the ConAgra employee benefits department the opportunity to review its terms. Thus, the district court concluded that Baumgardner and Winters remained unaware of Goslee's negotiations and the sale's implications as to ConAgra's future pension liabilities. The district court also found, and the parties do not dispute, that the subject of continuing pension liabilities for hourly employees, post-termination of the Lease Agreement, was never broached during the negotiations, much less specifically negotiated between Goslee and Stevens.[4]

On December 31, 1998, approximately one year early, the parties mutually terminated the Lease Agreement. At that point, ConAgra approached Confish concerning its responsibility under the

---

[4] Conversely, during the negotiations, Goslee and Stevens did negotiate post-termination liability for workers' compensation benefits and the potential cost of WARN Act liabilities. Confish agreed to fund those future costs and paid, pursuant to the Lease Agreement, a $250,000 deposit to secure that obligation.

4

Lease Agreement for reimbursement of post-termination pension costs. Confish took the position that the Lease Agreement did not contemplate transfer of these post-termination pension costs. Moreover, Confish disputed any liability to ConAgra for pension costs incurred and paid during the term of the Lease Agreement, which ConAgra billed, as it had in the past, in accordance with Financial Accounting Standards Board Statement No. 87 ("FAS 87").

Consequently, on January 11, 2000, ConAgra filed suit in federal court against Confish for breach of the Lease Agreement. ConAgra sought money damages for previously incurred pension costs, a declaration that Confish was obligated to reimburse ConAgra for post-termination pension costs, and attorneys' fees and expenses. Confish initially made two arguments in defense: (1) that it did not owe any previous or future pension costs; and (2) "costs" only included "contribution" or "out-of-pocket" costs actually incurred — not the amount calculated in accordance with FAS 87. Confish also counterclaimed for breach of the Lease Agreement and asserted that, during the Lease Agreement, it had overpaid ConAgra for salaried employee pension costs by $43,286 through the use of FAS 87. Stevens also joined as a counterclaim plaintiff in an effort

5

to recover $50,000 he claimed Goslee promised upon early termination of Lease Agreement.[5]

The parties waived a jury trial and a two-day bench trial followed. At the conclusion of the trial, and after considering the parties' post-trial written submissions, the district court held that: (1) the Leasing Agreement obligated Confish to reimburse ConAgra for all pension costs incurred and paid by ConAgra during the term of the Leasing Agreement; (2) the Leasing Agreement did not obligate Confish to continue to reimburse ConAgra for post-termination pension costs; (3) Confish was only obligated to reimburse ConAgra for "contribution costs" and not pension costs as calculated under FAS 87; (4) ConAgra should receive $49,630.20 for past pension costs; and (5) Stevens should receive $50,000 on his counterclaim.

The district court also denied ConAgra's motion to amend its complaint to add a claim for unjust enrichment and held, in the alternative, that the claim could not be sustained. Last, the district court determined that each party would bear its own attorneys' fees and expenses. ConAgra timely appealed the decision to this court.

## II. STANDARD OF REVIEW

---

[5] On the eve of trial, Confish conceded that it owed ConAgra for past pension costs in the amount of $94,802. This amount was arrived at by using the "contribution costs" formula — not FAS 87. Moreover, Confish contended that it only owed ConAgra the net amount of $49,630.20 after deducting non-pension credits to which the parties had stipulated. ConAgra, of course, disputed the calculation method, but otherwise agreed to the stipulations.

6

The district court's legal conclusions are reviewed de novo and its findings of fact are reviewed for clear error. In re Liljeberg Enterprises, Inc., 304 F.3d 410, 423 (5th Cir. 2002). "Under a clear error standard, this court will reverse only if, on the entire evidence, we are left with the definite and firm conviction that a mistake has been made." Otto Candies, L.L.C. v. Nippon Kaiji Kyokai Corp., 346 F.3d 530, 534 (5th Cir. 2003) (citations and quotations omitted).

As a court sitting in diversity, we are Erie-bound to apply Mississippi substantive law. In re Knight, 208 F.3d 514, 516 (5th Cir. 2000). The district court's interpretation of a contract, including the initial determination whether the contract is ambiguous, is a conclusion of law. Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc., 857 So. 2d 748, 751 (Miss. 2003)(citing Mississippi Transp. Comm'n v. Ronald Adams Contractor, Inc., 753 So. 2d 1077, 1087 (Miss. 2000). "The subsequent interpretation of the ambiguous contract presents a finding of fact . . . ." In re Estate of Harris, 840 So. 2d 742, 745 (Miss. 2003). Last, the district court's decision to deny a motion to amend will not be disturbed absent an abuse of discretion. See Nilsen v. City of Moss Point, Miss., 621 F.2d 117, 122 (5th Cir. 1980).

## III. DISCUSSION

ConAgra raises several arguments on appeal: (1) the district court misconstrued Mississippi contract law; (2) Confish

7

is obligated to reimburse it for pension costs in accordance with FAS 87; (3) Confish must continue to reimburse it for post-termination pension costs; (4) the district court erred in refusing to allow it to amend its complaint to add a claim for unjust enrichment; (5) it could, if permitted, sustain an unjust enrichment claim; and (6) it is entitled to attorneys' fees and expenses under the Lease Agreement. We address each argument in turn.

## A. Breach of Contract

The district court concluded that the Lease Agreement did not obligate Confish to reimburse ConAgra for post-termination pension costs. ConAgra offers two arguments on this point. First, ConAgra argues that the district court misconstrued Mississippi contract law, applying a heightened standard of review. Second, ConAgra claims that the Lease Agreement and the evidence produced at trial establish that the parties contemplated ongoing reimbursement post-termination.

Properly viewed, the district court's opinion did not misstate Mississippi contract law. Its conclusions of law recite various principles for the construction of contracts. As the district court recognized, under Mississippi law, courts must enforce unambiguous contracts as written. <u>Royer Homes</u>, 857 So. 2d at 751. Therefore, the court must first look to the "four corners" of the contract to determine the parties' intent. <u>Ivison v.</u>

8

<u>Ivison</u>, 762 So. 2d 329, 335 (Miss. 2000). However, if the agreement is ambiguous, the court should consider extrinsic or parol evidence to ascertain the contract's meaning. See <u>Pursue Energy Corp. v. Perkins</u>, 558 So. 2d 349, 352 (Miss. 1990).

The district court, in refusing to grant summary judgment, determined that the contract was ambiguous. On appeal, the parties do not dispute this conclusion and we agree. Thus, the district court properly looked to parole evidence to inform its decision concerning this woefully vague agreement. Based on the parties' intent, the district court found that the post-termination pension funding obligations were not transferred from ConAgra to Confish, and that "these obligations cannot be shifted absent clear contractual agreement."

The court based its conclusion on the admissible record evidence "and the applicable rules of contract interpretation." The court's language about a clear contractual agreement does not imply a "heightened" standard of contract interpretation, as ConAgra insists. Instead, the court found that, viewed in context of all the applicable rules of contract interpretation, there was no agreement to transfer the ongoing funding obligations to Confish after the Lease Agreement terminated.

Furthermore, the district court specifically found that Stevens, acting for Confish, was unaware throughout the course of the negotiations that retroactive pension benefits were being added

9

to the hourly employees' new CBA. The issue was never the subject of negotiation between the parties. ConAgra does not seriously challenge these findings. Hence, we conclude that the district court's findings on this issue were not the product of clear error. Accordingly, we affirm the district court's ruling that the Lease Agreement was ambiguous and that the parties, based upon the record evidence, did not contemplate shifting post-termination pension costs to Confish.[6]

## B. Calculation of "Costs"

Next, ConAgra asserts that the district court erred in its conclusion that the "costs" of pension benefits only included actual contribution costs, and not the amount calculated in accordance with FAS 87. The district court agreed with Confish's argument that "costs" meant "out-of-pocket" costs, which the court determined was consistent with the term's plain meaning.[7] The district court erred.

The Lease Agreement provides that: "Lessor shall invoice costs of fringe benefits to Lessee no less frequently than on a monthly basis . . . ." The Lease Agreement failed to define "costs" and the parties agree that the definition cannot be ascertained from the "four corners" of the document. Therefore, we

---

[6] We also affirm the district court's award of $50,000 to Stevens based upon an oral contract. ConAgra does not dispute this aspect of the judgment.

[7] On appeal, Confish refers to "actual contribution costs" as "out-of-pocket costs." These terms are interchangeable.

10

must look to parol evidence to ascertain the parties' intent. <u>See</u> <u>Pursue Energy</u>, 558 So. 2d at 351-53. In reaching its conclusion, the district court found that the Restatement (Second) of Contracts § 201 specifically applied to this case.[8] We agree. Section 201 states, in relevant part, that "where the parties have attached the same meaning to a promise or agreement <u>or a term thereof</u>, it is interpreted in accordance with that meaning." (emphasis added); <u>see also</u> <u>Kight v. Sheppard Bldg. Supply, Inc.</u>, 537 So. 2d 1355, 1358 (Miss. 1989) ("[T]he construction which the parties have placed upon the contract, or what the parties to the contract do thereunder, is relevant extrinsic evidence, and often the best evidence, of what the contract requires them to do.") (citation omitted).

In the present case, there is compelling record evidence that the parties intended "costs" to be calculated in accordance with FAS 87. First, during the course of the informal leasing arrangement, in effect between 1991 and December 18, 1996, Confish reimbursed ConAgra for pension costs for salaried workers according to FAS 87. This fact is undisputed by the parties. Moreover, Confish did not produce any evidence that the formal Lease Agreement altered this particular arrangement or the parties' understanding of the term "costs." Second, Stevens testified at

---

[8] As the district court recognized, Mississippi courts often look to the Restatement in resolving contract disputes. <u>See</u> <u>Warwick v. Matheney</u>, 603 So. 2d 330, 335 (Miss. 1995).

11

trial that he was aware that ConAgra's actuarial estimates of pension costs were based on FAS 87. Third and perhaps most importantly, during the Lease Agreement, Confish reimbursed ConAgra for pension costs in accordance with FAS 87.

Taken together, these facts warrant the conclusion that the parties understood "costs" to incorporate the FAS 87 standard. The district court committed clear error in disregarding the parties' intent as to this contractual provision. Confish was required to reimburse ConAgra for all pension costs incurred during the Lease Agreement in accordance with FAS 87. Moreover, based on our conclusion, Confish was not entitled to a credit for the salaried employee pension benefits, which it had reimbursed ConAgra during this period in accordance with FAS 87. Because we are unable to glean from the record the precise amount owed to Conagra, we remand to the district court for a proper calculation of damages.

## C. Unjust Enrichment

ConAgra also appeals the district court's denial of its motion to amend its complaint to add a claim for unjust enrichment. Seventeen months before trial, ConAgra moved for leave to amend its complaint to add a claim for unjust enrichment. The motion was denied by a magistrate judge on May 29, 2001. ConAgra never appealed this order to the district court pursuant to Uniform Local Rule 72.2(A) for the United States District Court for the Northern

12

and Southern Districts of Mississippi. Instead, at trial, ConAgra attempted to elicit an opinion from its expert regarding the alleged savings Confish achieved by refusing to pay post-termination pension costs. ConAgra then moved to amend its complaint to add a claim for unjust enrichment based upon its expert's opinion.

Rule 15(a) of the Federal Rules of Civil Procedure requires that leave to amend "be freely given when justice so requires." ConAgra may amend its complaint if Confish consented, either expressly or impliedly, to trial of the issue. See Fed. R. Civ. P. 15(a). Absent consent, the district court should have considered in making its decision, inter alia, undue delay, dilatory motive on the part of the movant, and undue prejudice to the opposing party by virtue of allowing the amendment. See Moody v. FMC Corp., 995 F.2d 63, 66 (5th Cir. 1993). Trial courts have ample discretion in determining when justice requires permission to amend. See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330, 91 S.Ct. 795, 802 (1971).

The district court concluded that Confish did not consent, in any manner, to the trial of an unjust enrichment claim. Further, the district court determined that, under the factors set forth in Rule 15(a), it would not grant ConAgra's request. ConAgra never attempted to appeal the magistrate judge's initial rejection to the district court. Also, ConAgra did not raise the unjust

13

enrichment claim as an issue to be tried in the pretrial order, which was entered one year before trial began. Accordingly, the district court did not abuse its discretion.[9]

### D. Attorneys' Fees and Expenses

Last, ConAgra argues that it is entitled to attorneys' fees and expenses under the Leasing Agreement. The Leasing Agreement provides that: "In any action to enforce any of the provisions of this Agreement, the party seeking to enforce this Agreement shall be entitled to recover costs and expenses of any such litigation, including reasonable attorneys' fees, in addition to all of the rights and remedies at law."

Under Mississippi law, "[i]t is well settled that attorney's fees are not to be awarded unless a statute or other authority so provides." Miss. Dep't of Wildlife, Fisheries & Parks v. Miss. Wildlife Enforcement Officers Ass'n, 740 So. 2d 925, 937 (Miss. 1999). "In breach of contract cases, attorney fees generally are not awarded absent provision for such in the contract or a finding of conduct so outrageous as to support an award of punitive damages." Garner v. Hickman, 733 So.2d 191, 198 (Miss. 1999).

---

[9] The district court alternatively held that ConAgra failed to state a claim for unjust enrichment because there was an express written agreement between the parties. However, having affirmed the district court's denial of ConAgra's motion to amend its complaint, we need not reach this issue.

14

Here, the Lease Agreement specifically afforded "reasonable attorneys' fees" and "expenses" to the party seeking to "enforce" the contract. ConAgra sought to enforce the Lease Agreement, and it has prevailed on two of its substantive claims. Consequently, it is entitled to recover reasonable attorneys' fees and expenses related to its successful enforcement efforts.

## IV.  CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court that the Lease Agreement did not contemplate post-termination reimbursement of pension costs. We also affirm the district court's decision to prohibit ConAgra from amending its complaint to add a claim for unjust enrichment, and its judgment in favor of Stevens for $50,000. However, we reverse the district court's conclusion that "costs" referred to actual pension plan contributions and not the FAS 87 standard. We also reverse the district court's denial of ConAgra's request for reasonable attorneys' fees and expenses.

Therefore, we **AFFIRM** in part, **REVERSE** in part, and **REMAND**, for a calculation of the allowable damages pursuant to FAS 87 and a determination of reasonable attorneys' fees and expenses pursuant to § 14 of the Lease Agreement.