DAVID S. GORBATY, Judge.
hln this appeal, plaintiffs assert that the trial court erred in dismissing their claims and denying their motion for new trial. For the reasons set forth below, we affirm.

FACTS AND PROCEDURAL HISTORY

Plaintiffs-Appellants (“Appellants”) are relatives and personal representatives of Greek and Filipino seamen who were aboard the MTV MARIKA on January 1, 1994. On that date, the vessel disappeared in a North Atlantic winter storm while in international waters en route from Canada to the Netherlands. Neither the vessel nor any crewmembers were ever recovered. Suit was filed in Orleans Parish on October 13, 1994, against Mitsubishi Heavy Industries (“MHI”), the company who constructed the vessel; the American Bureau of Shipping (“ABS”), the surveyors who certified that the vessel was seaworthy after repairs in Greece in April 1993; and The Salvage Association, Ltd. (“SA”) and Paul Francis Daniel (“Daniel”), the surveyors who, in conjunction with the vessel’s hull |2insurance policy, performed a survey in Brazil in October 1993 and concluded that the vessel’s condition was satisfactory.
The litigation was interrupted at various times due to the events of September 11, 2001; litigation involving forum non con-veniens, the aftermath of Hurricane Katrina in 2005, Typhoon Durian in the Philippines in 2006, and the process of obtaining visas for the Filipino plaintiffs to travel to the United States for deposition purposes.
On July 30, 2007, SA and Paul Francis Daniel filed a motion for summary judgment. The trial court granted Daniel and SA’s motion for summary judgment on October 3, 2007, as well as a motion for summary judgment filed by ABS. That same date, the trial court also granted a motion to dismiss the Filipino plaintiffs that had been filed by MHI on June 28, 2007. Appellants’ motion for new trial was denied on October 16, 2007. On November 15, 2007, the trial court issued written reasons for each of the three judgments. This appeal followed.
On June 3, 2009, this Court affirmed the trial court’s dismissal of all Defendants-Appellants. Cantuba v. American Bureau of Shipping and Mitsubishi Heavy Industries, Ltd., 2008-0497 (La.App. 4 Cir. 6/3/09), 31 So.3d 397, 2009 WL 1564474. On August 10, 2009, rehearing was granted, ordering the matter reset for oral argument on November 17, 2009.

STANDARD OF REVIEW

An appellate court generally reviews a judgment granting dismissal under the abuse of discretion standard. Ridgeway v. Pierre, 2006-0521, p. 4 (La.App. 4 Cir. 1/11/07), 950 So.2d 884, 888. Appellate courts review summary judgments de novo while applying the same criteria ap *400 plied by trial courts to determine whether summary judgment is appropriate. Huber v. Liberty Mut. Ins. Co., 2000-0679, p. 5 (La.App. 4 Cir. 2/7/01), 780 So.2d 551, 554.

\ .DISCUSSION

On appeal, Appellants assert five assignments of error: 1) the tidal court erred in dismissing the claims of the Filipino Appellants against MHI pursuant to La. Code Civ. Proc. art. 1471 and in denying the motion for new trial when there was no showing of willfulness, bad faith, or fault on the part of the claimants; 2) the trial court erred in dismissing Appellants’ claims against MHI because there was sufficient evidence in the record which justified Appellants’ failure to appear for depositions in New Orleans; 3) the trial court erred in dismissing Appellants’ claims with prejudice because less drastic sanctions would have been effective and MHI’s trial preparation was not prejudiced; 4) the trial court erred in granting ABS’ motion for summary judgment because genuine issues of material fact existed regarding the reliance by the officers and crew of the vessel on the survey performed by ABS; and 5) the trial court erred in granting SA and Paul Francis Daniel’s motion for summary judgment because genuine issues of material fact existed regarding the reliance by the officers and crew of the vessel on the survey performed by SA and Daniel.
MITSUBISHI HEAVY INDUSTRIES
The first three assignments of error all concern the same issue: plaintiffs’ failure to appear for deposition.
La. C.C.P. art. 1471 provides in pertinent part:
If a party ... fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
(3) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or [¿proceeding or any part thereof, or rendering a judgment by default against the disobedient party.
Trial courts in Louisiana have broad discretion when regulating pre-trial discovery. This discretion will not be disturbed on appeal absent a clear showing of abuse. Moak v. Illinois Cent. R. Co., 93-0783 (La.1/14/94), 631 So.2d 401. In Hutchison v. Westport Insurance Corp., 2004-1592 (La.11/8/04), 886 So.2d 438, the Supreme Court recognized that a trial court has much discretion in imposing sanctions on litigants for failure to comply with discovery orders, and noted, “Although dismissal is a harsh remedy, this case is deserving of a harsh remedy, as these tactics and delays frustrate the judicial system.” Id. at 440.
Plaintiffs state that they could not comply with discovery orders because of Hurricane Katrina, post-9/11 travel restrictions, and Typhoon Durian (a catastrophic typhoon in the Philippines). Many plaintiffs lived in remote areas of the Philippines, further slowing the process of reapplying for visas. Plaintiffs point out that Mr. Musslewhite, plaintiffs’ counsel, traveled to Manila in order to participate in the visa application process to the extent allowed.
The Filipino plaintiffs violated court orders to appear in New Orleans for deposition multiple times. The Filipino plaintiffs filed suits in Civil District Court for the Parish of Orleans in 1994. In February 2000, they were ordered by the trial court to appear in New Orleans for depositions. None of the plaintiffs appeared, nor was the court advised that they would not ap *401 pear. In 2005, MHI filed a motion to dismiss. Plaintiffs responded that they were unable to obtain a visa to travel to New Orleans. In February 2005, the court denied that motion, but ordered plaintiffs to reapply for a visa at the U.S. Embassy in Manila. If that application | Swas unsuccessful, plaintiffs were to notify the court so that a status conference could be scheduled.
In August 2006, MHI obtained permission from the court to file Supplemental Interrogatories and Requests for Production of Documents to the Filipino plaintiffs in an effort to learn whether they had reapplied for visas as ordered by the court. No answer was received, and a Motion to Compel was filed. The responses eventually received in December 2006 indicated that plaintiffs had done nothing and had failed to reapply for visas at the U.S. Embassy.
Plaintiffs did not attempt to reapply for visas until after MHI filed its second Motion to Dismiss on June 28, 2007. MHI introduced the affidavits of immigration attorney/expert, Mark Murov, who stated that the efforts by plaintiffs and their counsel to procure visas were “woefully inadequate” even by minimum standards that any layperson could easily have learned. Plaintiff offered no affidavit or other evidence that would excuse their inaction and noncompliance with the trial court’s orders.
This case illustrates a complete refusal of the litigants and their attorneys to comply with the orders of the trial court. The trial court properly dismissed the claims because its orders were flouted, defied and ignored for 8 years. Plaintiffs disregarded the order to reapply for visas for two and a half years, and made no effort to reapply for visas until after the defendants moved to dismiss plaintiffs’ suits. Plaintiffs were aware of the need to travel to the United States for depositions, but repeatedly failed to take steps to do so.
Under these specific circumstances, we conclude that the trial court did not abuse its broad discretion. We distinguish this case from Columbia Homestead Ass’n v. Arnoult, 615 So.2d 1 (La.App. 4 Cir.1992), and its progeny, in light of | fithe particular facts of this case. Here, the plaintiffs’ repeated and egregious failure to comply with orders over a period of several years justifies the remedy imposed. As such, this portion of the trial court’s judgment is affirmed.
AMERICAN BUREAU OF SHIPPING
In the fourth assignment of error, Appellants assert that the trial court erred in granting ABS’s motion for summary judgment because genuine issues of material fact existed regarding reliance by the officers and crew on the survey performed by ABS.
ABS performed a survey on the hull of the MW MARIKA in Pireaus, Greece between March 12 and April 15 of 1993. Repairs were made to the vessel during this period as well. The ABS survey report found that there were no outstanding class items[1] and that the vessel was in satisfactory condition upon completion of the repairs, issuing a Cargo Ship Safety Construction Certificate on April 15, 1993 to the vessel. After the repairs, the vessel successfully traveled to France, South Africa, Slovenia, and Brazil.
Appellants argued that ABS is liable for negligent misrepresentations made in warranting that the M/V MARIKA was seaworthy. ABS filed a motion for summary judgment, and on October 3, 2007, the trial *402 court granted the motion, dismissing all claims against ABS.
It is well-settled that a shipowner has a non-delegable duty to maintain a vessel’s seaworthiness. See, e.g., Sundance Cruises Corp. v. American Bureau of Shipping, 799 F.Supp. 363, 385 (S.D.N.Y.1992). “[S]ocieties’ surveys and certificate system are essential to maintaining the safety of maritime commerce, |7yet their activities should not derogate from shipowners’ and charterers’ non-dele-gable duty to maintain seaworthy vessels.” Otto Candies, LLC v. Nippon Kaiji Kyokai Corp., 346 F.3d 530, 532 (5th Cir.2003). A classification certifícate is thus not obtained to guarantee the vessel’s safety, but is a requirement to procuring hull insurance, and can allow a vessel owner to obtain lower insurance premiums. Sundance, 799 F.Supp. at 369.
In Otto Candies, supra, the court enumerated the four factors that a plaintiff must establish in order to prevail on a claim of negligent misrepresentation:
1) That the classification society, in the course of its profession, supplied false information for the crew’s guidance in a business transaction;
2) That the classification society failed to exercise reasonable care in gathering the information;
3) That the crew justifiably relied on the false information in a transaction that the classification society intended to influence; and
4)That the crewmembers thereby suffered pecuniary loss as a result of its reliance.
Otto Candies, 346 F.3d at 535. The court also noted that a plaintiff claiming negligent misrepresentation must be a “person, or a member of a ‘limited group’ of persons for whose benefit and guidance the [classification society] either intends to supply the information or knows the recipient intends to supply it.” Id. (quoting Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 318 (5th Cir.2002).
Appellants in this case rely on Otto Candies for the proposition that ABS is liable for negligent misrepresentation. In Otto Candies, the owner of a vessel that had been classified by NKK (the SPEEDER), a Japanese vessel classification society, agreed to sell the SPEEDER to Otto Candies. Otto Candies, 346 F.3d at | s532. Because the classification had lapsed, however, the sale agreement was conditioned upon NKK reclassifying the SPEEDER to be free from any outstanding recommendations. Id. NKK certified the vessel, issuing a Class Maintenance Certificate to the owner. Id. After this transaction was completed, Otto Candies issued payment for the SPEEDER, and transported it from Japan to Mobile, Alabama. Id. Otto Candies retained ABS subsequent to the sale to survey the vessel and transfer the classification from NKK to ABS. Id. The ABS surveyor, however, noted serious deficiencies[2] in the SPEEDER and found *403 that it required extensive repairs before ABS could classify it. Id. The vessel was ultimately repaired at a cost to Otto Candies of $328,096.43. Id. Otto Candies filed suit to recover the costs of repairs needed to obtain the ABS certificate, asserting that NKK was liable for negligent misrepresentation in certifying that the SPEEDER was free from outstanding recommendations. Id. at 533.
Before determining that Otto Candies could bring a negligent misrepresentation claim, the Fifth Circuit emphasized that claims for negligent misrepresentation must be strictly and carefully limited, as the imposition of undue liability on classification societies could be harmful. Id. at 535. Specifically, “[t]he societies could be deterred by the prospect of liability from performing work |9on old or damaged vessels that most need their advice” and it “could diminish owners’ sense of responsibility for vessel safety even as it complicates liability determinations.”[3] Accordingly, the holding of Otto Candies was narrow, finding that Otto Candies was eligible to bring a negligent misrepresentation claim against NKK under the facts of that particular case “because NKK actually knew at the time it reclassified the' SPEEDER that the results of the classification survey were to be conveyed to Otto Candies for the purpose of influencing its decision to purchase the SPEEDER.”[4] Id. at 537.
Contrary to Appellants’ argument, the scenario in Otto Candies is not analogous to the facts of this case, as the plaintiff in Otto Candies specifically requested and relied upon the survey and information provided by NKK, and used that information, a misrepresentation on the part of NKK, in its decision to purchase the vessel. Id. at 536. Additionally, NKK was aware[5] that Otto Candies would re *404 ceive NKK’s report and use it to guide their decision to purchase the SPEEDER. Id.
| mMoreover, we do not find that Appellants established the necessary elements for a claim of negligent misrepresentation against ABS under these particular facts and circumstances. Appellants do not point to any evidence that ABS failed to exercise reasonable care in gathering the information contained in its survey report, nor does the record evidence a lack of such reasonable care. Similarly, the record does not reveal that any of the information contained in the survey is false. Additionally, we find no evidence in the record which demonstrates that any member of the crew relied upon or even read or saw the contents of the survey.[6] Because the record does not evidence that the crew relied on survey documents prepared by ABS, the fourth element is also not met (that the crewmembers suffered a pecuniary loss as a result of the reliance).[7] Finally, we find that Appellants failed to demonstrate that they are a part of the limited group of persons for whose benefit and guidance ABS either intended to supply the information or knew that Marika Maritime intended to supply it. See Otto Candies, supra. Accordingly, under the current status of federal jurisprudence, we are required to affirm the trial court’s findings with respect to the American Bureau of Shipping.
THE SALVAGE ASSOCIATION AND PAUL FRANCIS DANIEL
In the fifth and final assignment of error, Appellants assert that the trial court erred in granting SA and Paul Francis Daniel’s motion for summary judgment because genuine issues of material fact existed regarding reliance by the officers and crew on the survey performed by SA and Daniel.
JnWhile the M/V MARIKA was in Brazil, Paul Francis Daniel, a surveyor for The Salvage Association, conducted a condition survey for the hull underwriters on October 3, 1993. Mr. Daniel noted in the survey that the external shell plating was in good condition and that a considerable amount of new steel had been added in the forepeak and permanent ballast tanks. Mr. Daniel ultimately concluded in his October 14, 1993 report that the vessel’s condition was satisfactory.
As discussed previously herein with respect to the necessary elements to establish a negligent representation claim, the record in this case does not reveal that any crewmember relied upon, read, or was otherwise aware of Daniel’s conclusions in the survey. See Otto Candies, supra, at 535-36. The October 14, 1993 report was provided only to the vessel’s owners and underwriters.[8] The record does not evidence that SA and Daniel provided the survey conclusions to the vessel’s crew and officers, or that such conclusions were false or intended for their guidance and benefit. *405 See id.[9] As we noted previously herein regarding Appellants’ allegations against ABS, under the current status of federal jurisprudence, we are similarly required to affirm the trial court’s findings with respect to the Salvage Association and Paul Francis Daniel.
MOTIONS FOR SANCTIONS
In this case, counsel for MHI filed a Motion to Disqualify John M. O’Quinn and Charles B. Musslewhite, Jr. as Counsel of Record for Appellants, asserting that O’Quinn and Musslewhite were not members of the Louisiana State Bar, and emphasizing that no pro hac vice order had been entered by any court allowing | |20’Quinn and Musslewhite to appear in this matter. In response, counsel for Appellants filed a Motion for Sanctions Pursuant to La. C.C.P. art. 863, arguing that not only have attorneys O’Quinn and Mus-slewhite participated in the case sub judice since its inception, but also that a pro hac vice order, signed on May 22, 1995, admitting attorneys O’Quinn and Musslewhite in this matter exists in the record.
Counsel for Appellants seek sanctions pursuant to La. C.C.P. art. 863, which provides that an attorney who signs a pleading certifies:
... that he has read the pleading; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact; that it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper pui-pose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
La. C.C.P. art. 863(B). Appellants further submit that La. C.C.P. art. 863(D) provides that sanctions be imposed for inaccurate certifications that are represented to the court:
If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney’s fee.
La. C.C.P. art. 863(D). Additionally, counsel for Appellants asserts that the record in this case clearly shows that both attorneys O’Quinn and Musslewhite were admitted pro hac vice, citing to the order signed by Judge Connolly signed on May 22,1995.
| ,sIn response, counsel for MHI filed a motion to dismiss the motion for sanctions, arguing that attorneys O’Quinn and Mus-slewhite failed to seek pro hac vice admission at the appellate level, but conceding that the attorneys were in fact admitted pro hac vice at the district court level in the case in 1995. Counsel for MHI cites no authority, however, for its assertion that a motion to appear pro hac vice should have been filed with this Court.
Counsel for MHI cites Hampton v. Greenfield, which held that the ability to impose sanctions for an La. C.C.P. art. 863 violation is necessarily limited to the trial court because “[ojnly a trial court is capable of holding the required art. 863 hearing where evidence may be presented on the sanctions issue.” Hampton, 618 So.2d 859, *406 862 (La.1993). The Court further held that the “court of appeal’s authority to regulate conduct before it is governed by La.Code Civ.P. art. 2164, which provides in pertinent part that “ ‘[t]he [appellate] court may award damages for frivolous appeal.’ ” Id. Accordingly, [b]y limiting the court of appeal’s authority to awarding damages solely for frivolous appeals, art. 2164 places a logical limit on the application of art. 863 to matters before the trial court.” Id. This Court followed Hampton in McCall v. McCall, 94-1614 (La.App. 4 Cir. 2/23/95), 651 So.2d 878, 887(emphasis added):
It is improper for this court to award sanctions pursuant to Louisiana Code of Civil Procedure Article 863. The authority to impose sanctions pursuant to article 863 is limited to the trial court. Hampton v. Greenfield, 618 So.2d 859 (La.1993). An appellate courts’ authority to regulate conduct before it is governed by Louisiana Code of Civil Procedure Article 2164 which provides, in pertinent part, the court may award damages for frivolous appeal. Hampton, supra.
This court lacks authority to impose La. C.C.P. art. 863 sanctions. As such, we deny Appellants’ Motion for Sanctions.
h.,CONCLUSION
Accordingly, for the foregoing reasons, the trial court’s judgment with respect to the Salvage Association, Ltd. and Paul Francis Daniel is affirmed. Likewise, the court’s judgment granting the motion for summary judgment in favor of ABS is affirmed. Finally, the judgment granting MHI’s motion to dismiss is also affirmed. Further, we deny Appellants’ Motion for Sanctions.

AFFIRMED.

LOVE, J., concurs in part and dissents in part.
BELSOME, J., concurs in part and dissents in part and assigns reasons.

. ABS conducts surveys to verify that a vessel is “in class.” ABS' classification of a vessel certifies that the vessel complies with ABS Rules.

. The ABS surveyor noted the following deficiencies that had to be remedied before ABS could classify the vessel:
... damaged and wasted overhead spool piping sections that connect the cooling system machinery to the hull; a hull fracture in the port-aft main-engine exhaust connection to the hull; fractured hull brackets, wasted cooling piping, leaks in the port and starboard stabilizer fins; excessive movement in the starboard stabilizer shaft; leaks in the port-forward main-engine sea strainer that filters the water used to cool the engines; disconnected and missing bilge pumps; gas and water leaks in the exhaust system; a faulty circuit breaker for the starboard generator; severe damage to the port-aft main propulsion gear; exterior and interior leaks in the main reduction gear oil coolers; damage to the starboard-forward *403 main engine; damage and deterioration in the ventilation system for the port-aft engine; corroded hose and pipe connections for the main and auxiliary engine fuel and lube oil systems that created a severe fire hazard; leaking water-jet pump shaft seals; a heavily corroded port and starboard water-jet pump-bladder accumulator-block valve; and that the engine oil was sooty, black, and contained particulate matter which suggested problems with the machinery.
Otto Candies, supra, at 532-33.

. In so doing, the court held that "in this context, we reject any implication that classification societies can be liable for negligent misrepresentation to parties, including without limitation seamen, longshoremen, passengers, cargo owners, and charterers that may rely upon a survey or class certificate, absent actual knowledge by the classification society that the certificate or survey report was being provided for the guidance and benefit of the party.” Otto Candies, supra, at 537.

. The district court admitted into evidence written correspondence from James Aitken-head, a ship broker, to Otto Candies directly supporting the court’s findings. Aitkenhead’s communications reveal that NKK was aware of the pending sale of the ship; that NKK’s reclassification of the SPEEDER free of recommendations was a condition of the agreement under which the SPEEDER was to be sold; and that Otto Candies' purchase of the SPEEDER would be based on NKK's classification of the ship free of recommendations.
Otto Candies, supra at 536.

.Although Captain Ioannides was present while the vessel was being repaired, there is no evidence demonstrating that he saw the survey documents that ABS provided to the MARIKA's owner or that he relied upon the documents in any way. Additionally, we find Appellants' reliance on Captain Ioannides' wife's hearsay testimony to be misplaced, as her testimony establishes only that she was erroneously under the impression that ABS guaranteed the M/V MARIKA's seaworthiness.

. Notably, the Otto Candies court further held: "[t]he fact that it is merely foreseeable or possible that a non-client of the [surveyor] would rely on the information is insufficient [to establish a negligent misrepresentation claim]." Otto Candies, 346 F.3d at 535.

. Appellants do not dispute this fact, but argue that the issue is whether the officers and crew knew about the survey and relied upon it.

. For the reasons discussed with regard to Appellants' claims against ABS, we also find that the fact drat the Master and Chief Engineer were present during Daniel's inspection does not operate to impute reliance upon or knowledge of the contents of the survey.