United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 11, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 06-20561

BRASPETRO OIL SERVICES COMPANY - BRASOIL; PETROLEO
BRASILEIRO SA, Petrobras

Plaintiffs - Appellants

v.

MODEC (USA), Inc.

Defendant - Appellee

--------------------
Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:06-CV-128
--------------------

Before KING, WIENER, and OWEN, Circuit Judges.

PER CURIAM:[*]

Plaintiffs-appellants Braspetro Oil Services Co. and Petroleo Brasileiro S.A. appeal the district court's dismissal of their case, arguing that the district court erred in enforcing a forum selection clause against them. For the following reasons, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1996 plaintiffs-appellants Braspetro Oil Services Co. ("Brasoil"), a corporation organized under the laws of the Cayman Islands, B.W.I., and Petroleo Brasileiros SA ("Petrobras")[1], a

---

[*] Pursuant to 5ᵀᴴ CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

[1] Brasoil is an indirect subsidiary of Petrobras.

Brazilian corporation (collectively the "plaintiffs"), invited bids on a project for the conversion of a large crude carrier into an oil platform for use off the shore of Brazil.  Modec, Inc. ("Modec"), a Japanese company, joined with Marítima Navegc~o e Engenharia Ltda., a Brazilian company, to form a consortium (the "Consortium") to bid on the project.  The plaintiffs awarded the contract to the Consortium, the lowest qualified bidder. Defendant-appellee Modec (USA), Inc. ("Modec USA"), a corporation domiciled in Texas, was not a member of the Consortium at that time, but pursuant to a written appointment, Modec USA acted as attorney-in-fact for Modec and participated in the bidding and negotiations.

In March 1997, the plaintiffs and the Consortium entered into a contract (the "Conversion Contract") which required the Consortium to complete the project within a specified time, and in return the plaintiffs agreed to pay the Consortium about $289 million.  Another contractual provision required the Consortium to provide a performance bond for the full contract price upon the execution of the Conversion Contract.  The Consortium did not post the bond upon execution of the contract, but several weeks later it tendered performance in the form of a bond written by U.K. Guaranty and Bonding Corp., Limited ("UKGB").

The Conversion Contract also had a forum selection clause designating Rio de Janeiro, Brazil as the forum for any disputes arising from the contract.  The plaintiffs allege that Modec USA joined the Consortium in 1997, and further allege that, as a result, Modec USA accepted joint and several liability for the

Consortium's duties and obligations under the Conversion
Contract.  The Consortium did not complete the project by the
specified date, and although the plaintiffs mitigated their
damages by completing the project using subcontractors and
suppliers, the Consortium did not reimburse the plaintiffs for
those expenses.  The plaintiffs then attempted to recover their
losses by collecting on the bond, but UKGB refused to honor the
bond.  Multiple lawsuits originated from this alleged breach of
the Conversion Contract and UKGB's refusal to honor the bond.

In 2002, the plaintiffs filed suit against other members of
the Consortium (Modec, Marítima Navegac~o e Engenharia Ltda and
Maritima Overseas, Inc.[2]) in the 32nd Civil Bench Court in Rio de
Janeiro, Brazil.  That suit is currently pending.  In that same
year, the plaintiffs filed suit in a New York state court against
UKGB, the bond writer.  The New York court dismissed that case on
forum non conveniens grounds, holding that Brazil was the
appropriate forum in which to litigate the claims related to the
bond.

On January 11, 2006, the plaintiffs filed the instant suit
against Modec USA for breach of contract, unjust enrichment,
fraud, and civil conspiracy in the Southern District of Texas.[3]
The plaintiffs allege that members of the Consortium, including

---

[2]  The plaintiffs allege that Maritima Overseas, Inc. joined
the Consortium in September 1997 at the same time as Modec USA.

[3]  The Southern District of Texas is where Modec USA resides
and the judicial district where many of the acts underlying this
litigation allegedly occurred.  The plaintiffs therefore contend,
and Modec USA does not dispute, that in the absence of
enforcement of the forum selection clause, venue is proper in the
Southern District of Texas to 28 U.S.C. § 1391(a).

Modec USA, breached the Conversion Contract when they failed to complete the project, failed to pay various subcontractors and suppliers, and did not provide a "first-class bond", and that Modec USA is jointly and severally liable for the breach of the Consortium's duties and obligations under the Conversion Contract. The plaintiffs also assert that Modec USA participated in a fraudulent conspiracy to obtain a faulty performance bond and to induce the plaintiffs to award the project to the Consortium. The other members of the Consortium are not parties to this lawsuit.

The district court granted Modec USA's motion to dismiss the complaint on the grounds that the plaintiffs and Modec USA were bound by the forum selection clause and that enforcement of the forum selection clause was not unjust or unreasonable. The court also held, alternatively, that it had discretion to dismiss the suit under the first-to-file rule because the litigation in Texas was duplicative of the litigation in Brazil. The plaintiffs now appeal.

## II. DISCUSSION

On appeal, the plaintiffs contend that the district court should not have enforced the forum selection clause. Specifically, the plaintiffs assert that the district court erred by (1) determining that the instant case was duplicative of the Brazilian suit, (2) applying the first-to-file rule to the plaintiffs' claims, (3) holding that the challenged behavior is within the scope of the forum selection clause, and (4) rejecting the plaintiffs' contention that applying the forum selection

clause is unjust and unreasonable under the circumstances.

We review a district court's decision to enforce a forum selection clause de novo. <u>Hellenic Inv. Fund, Inc. v. Det Norske Veritas</u>, 464 F.3d 514, 517 (5th Cir. 2006). On a Rule 12(b)(3) motion to dismiss for improper venue, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff. <u>See, e.g.</u>, <u>Murphy v. Schneider Nat'l, Inc.</u>, 362 F.3d 1133, 1138 (9th Cir. 2004); 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1352 (3d ed. 2004).

Forum selection clauses play an important role in international contracting because they eliminate the "uncertainty as to the forum for disputes and applicable law [that] 'will almost inevitably exist with respect to any contract touching two or more countries.'" <u>Haynsworth v. The Corp.</u>, 121 F.3d 956, 962 (5th Cir. 1997) (quoting <u>Scherck v. Alberto-Culver Co.</u>, 417 U.S. 506, 516 (1974)). Federal law applies to determine the enforceability of forum selection clauses in both diversity and federal question cases. <u>Id.</u> Such clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 10 (1972) ("<u>The Bremen</u>"). A forum selection clause may be considered unreasonable if:

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or

> unfairness of the selected forum; (3) the
> fundamental unfairness of the chosen law will
> deprive the plaintiff of a remedy; or
> (4) enforcement of the forum selection clause
> would contravene a strong public policy of the
> forum state.

Haynsworth, 121 F.3d at 963. To qualify as unreasonable, the fraud and overreaching must be specific to the forum selection clause. Id. The party resisting application of the forum selection clause has a "heavy burden of proof." The Bremen, 407 U.S. at 17. Forum selection clauses are generally enforced. See, e.g., Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991) (enforcing a forum selection clause in a cruise line's ticket contract). The Court "has enforced every forum selection clause in an international contract that has come before it" since deciding The Bremen. Haynsworth, 121 F.3d at 963.

The plaintiffs urge that the forum selection clause does not apply to the claims against Modec USA because (1) the scope of the fraud and conspiracy extends beyond the scope of the Conversion Contract, and (2) the alleged acts of fraud and conspiracy took place before the execution of that contract. The plaintiffs allege that Modec USA is a member of the Consortium and assumed all the duties of the Consortium under the Conversion Contract, and we must accept that allegation as true in reviewing a Rule 12(b)(3) dismissal. Before we can consider enforcing a forum selection clause, we must first determine "whether the clause applies to the type of claims asserted in the lawsuit," Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 692 (8th Cir. 1997). In this inquiry we "look to the language of the parties' contracts to determine which causes of action are

governed by the forum selection clause[]." <u>Marinechance</u>

<u>Shipping, Ltd. v. Sebastian</u>, 143 F.3d 216, 222 (5th Cir. 1998).

Although the Conversion Contract is written in Portuguese,

the official English translation states:

> The parties hereby elect the courts of the
> City of Rio de Janeiro, State of Rio de
> Janeiro, as competent to solve any dispute or
> controversy arising from the execution of this
> Contract, with express waiver of any other
> court, regardless of any privilege thereof.

The term "arising" is generally interpreted as indicating a

causal connection. <u>See</u> <u>Coregis Ins. Co. v. Am. Health Found.,</u>

<u>Inc.</u>, 241 F.2d 123, 128 (2d Cir. 2001) (interpreting the phrase

"arising out of" in the context of an insurance policy and

observing that "[t]he phrase 'arising out of' is usually

interpreted as "indicat[ing] a causal connection.") (quoting <u>Am.</u>

<u>States Ins. Co. v. Guillermin</u>, 671 N.E.2d 317, 325 (Ohio Ct. App.

1996) (alteration in original).

The plaintiffs' contention that the forum selection clause

does not apply to the claims against Modec USA because the claims

are outside the clause's scope fails, as this assertion is

inconsistent with the pleadings. In the pleadings, the

plaintiffs alleged "[t]he Conversion Contract obligated the

Consortium to provide a Performance Bond for the full amount of

the Conversion Contract." Any fraudulent act in procuring that

bond, therefore, arose from and grew out of the existence of the

requirement in the Conversion Contract.

Further, to the extent that the plaintiffs assert that the

alleged acts occurred before the execution of the Conversion

Contract and therefore did not arise out of the execution of the

contract, this argument is foreclosed by our circuit's precedent. In Haynsworth v. Lloyd's of London, the plaintiffs alleged fraud, breach of fiduciary duty, and violations of the Texas Deceptive Trade and Practice Consumer Protection Act and the Texas Securities Act based on the defendants' alleged efforts to induce the plaintiffs to unwittingly underwrite high-risk insurance policies. 121 F.3d 956, 960-61 (5th Cir. 1997). As here, the alleged fraudulent acts underlying the claims in Haynsworth occurred before the parties entered into the agreement with the forum selection clause, and the district court enforced the forum selection clause. Id. at 963-64. On appeal, the plaintiffs asserted that the defendants made certain misrepresentations to lure them into agreeing to the forum selection clause, and that they entered into the agreements based on the alleged fraud. Id. The court rejected that argument, holding that any misrepresentations that were made related to the contract as a whole. Id. at 963. Specifically, the court held that "fraud . . . must be specific to a forum selection clause . . . to invalidate it . . . . [A]llegations of such conduct as to the contract as a wholeSSor portions of it other than the [forum selection] clauseSSare insufficient; the claims of fraud . . . must be aimed straight at the [forum selection] clause . . . to succeed." Id. (internal citations omitted). The alleged fraud in the instant case is not specific to the forum selection clause but goes to both to the Conversion Contract as a whole and also to the bond requirement contained in the contract.

The plaintiffs cite numerous district court cases in which

courts have held that claims based on fraudulent acts made before a contract was entered into were not subject to forum selection clauses in the contracts.  All are factually distinguishable.[4]

The plaintiffs also cite Farmland Industries, Inc. v. Frazier-Parrott Commodities, Inc., in which the Eighth Circuit did not enforce a forum selection clause within an agreement that it determined the plaintiff would not have made in the absence of fraud.  806 F.2d 848 (8th Cir. 1987), rev'd on other grounds, Lauro Lines S.R.L. v. Chasser, 490 U.S. 495 (1989).  But in Farmland Industries, the Eighth Circuit limited its holding to situations involving "a fiduciary relationship (such as between a commodities broker and its customer)."  Id. at 851.  The court also based its holding in part on Missouri's public policy against forum selection clauses in declining to enforce the clause.  Id. at 852.  No similar fiduciary relationship exists here, and we are not faced with a similar public policy concern. And finally, to the extent Farmland Industries might be

---

[4]  We discuss only the district court case most prominently featured in the plaintiffs' brief. In Smith v. Lucent Technologies, No. 02-0481, 2004 WL 515769, *2 (E.D. La. 2004), the parties entered into a contract in 1999 for Lucent to provide certain products to Actel, Inc.  Then in 2000, those same parties entered into a loan and security agreement that contained a forum selection clause. Id.  When Actel's bankruptcy trustee brought suit against Lucent, alleging that it breached the 1999 contract, the district court concluded that the forum selection clause in the 2000 contract did not apply. Id. at *13.  The contract containing the forum selection clause had already been fulfilled and the court found that the claims brought by the bankruptcy trustee had no "discernible association or link with those facts that would support a parallel breach of contract claim with respect to the 2000 Agreement." Id.  In contrast, in the instant case, the same facts that support the fraud claim support a parallel breach of contract claim, and the breach of the contract containing the forum selection clause and the fraud accompanying that breach are the focus of the complaint.

persuasive in the absence of these distinctions, it is inconsistent with our circuit's precedent that allegations of fraud in the inducement of a contract must relate specifically to the forum selection clause to render that clause unenforceable. Cf. Haynsworth, 121 F.3d at 962-63 (holding that to invalidate a forum selection clause alleged fraud must be specific to that clause). Accordingly, the claims brought are within the scope of the forum selection clause.

**D.   Unjust and Unreasonable**

To defeat the presumption that the forum selection clause at issue here is valid, the plaintiffs must show that enforcement in this situation would be unreasonable and unjust. See The Bremen, 407 U.S. at 10. The plaintiffs contend that applying the clause is unreasonable and would effectively deny the plaintiffs their day in court because (1) it would be very expensive and take a long time to bring suit against Modec USA in Brazil, and (2) Modec USA has already argued that it is not part of the Consortium and that the Conversion Contract does not apply to it. These arguments do not satisfy the heavy burden the plaintiffs have in demonstrating unreasonableness, particularly given that one of the plaintiffs, Petrobras, is located in Brazil and the plaintiffs chose Brazil as the designated forum.

In support of its argument that the cost and time necessary to bring suit against Modec USA in Brazil would be prohibitive, the plaintiffs note that to serve Modec USA, they would have to utilize letters rogatory, a process that can take up to a year or more. But as the plaintiffs waited more than four years after

bringing suit against the other members of the Consortium to file this complaint against Modec USA, their argument that time considerations make enforcement of the forum selection clause unreasonable is unconvincing. Had the plaintiffs brought suit against Modec USA in 2002 when they filed suit against the other parties, service might well have been complete at this point in the litigation. And although the plaintiffs contend that if they are forced to begin the time-consuming letters-rogatory process now, witnesses and evidence will likely become stale, they cite no specific evidence or witnesses. Again, the plaintiffs' four-year delay in bringing the suit against Modec USA undercuts their assertion that time concerns require litigating this action in the United States.

Further, the plaintiffs' argument that the procedures in Brazil are onerous is undercut by the fact that they chose Brazil as their designated forum. The plaintiffs were sophisticated parties contracting voluntarily, and the plaintiffs do not allege fraud specific to the inclusion of the forum selection clause.

Finally, the plaintiffs contend that Modec USA has not consented to jurisdiction in Brazil. But Modec USA also has not challenged Brazil's jurisdiction or even been served with a complaint in the Brazilian litigation. And although Modec USA did argue in the district court that it is not part of the Consortium and that the Conversion Contract does not apply to it, this argument challenges the merits of the complaint and does not imply that Brazil would not have jurisdiction. The plaintiffs have not satisfied their burden that it would be unjust or

unreasonable to enforce the forum selection clause.

Because the claims at issue in this case fall within the scope of the forum selection clause, and enforcement of the clause is not unreasonable or unjust under these circumstances, the district court did not err in enforcing the forum selection clause. We need not and do not reach the remaining issuesSSwhether the district court properly determined that this suit was duplicative of the Brazilian suit or whether the first-to-file rule was properly appliedSSbecause those issues involve alternative grounds relied on by the district court.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment and its subsequent order denying reconsideration.