**FILED**

**June 15, 2022**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 20-0680, *Beckley Health Partners, LTD, d/b/a The Villages at Greystone; Chancellor Senior Management, LTD; and Megan Ward Wilson, Residence Manager v. Cynthia F. Hoover, Durable Power of Attorney of Elveria M. Faw.*[1]

Armstead, Justice, concurring, in part, and dissenting, in part:

The petitioners in this matter, Beckley Health Partners, LTD, d/b/a The Villages at Greystone, Chancellor Senior Management, LTD, and Megan Ward Wilson, Residence Manager, (together, "Greystone") challenge the circuit court's refusal to compel the respondent, Cynthia Hoover, in her capacity as the administratrix of her mother's estate (the "Estate"), to submit to arbitration. The majority opinion affirms the circuit court's refusal to compel arbitration, and I concur with most of the majority opinion's analysis. Nevertheless, because I believe that the Estate is bound by the Residential and Community Arbitration Agreement ("Arbitration Agreement") under the doctrine of estoppel, I respectfully dissent and would reverse the circuit court on this issue.

**Estoppel.**

Ms. Faw signed neither the Arbitration Agreement nor the Assisted Living Residency Agreement ("Residency Agreement"). Although Ms. Hoover signed both agreements as "Responsible Party," the majority finds that she lacked authority to bind her

---

[1] This is how the petitioners have styled their appeal. However, as the majority opinion notes, Ms. Hoover actually appears as Ms. Faw's *administratrix*.

mother at the time she executed these documents.[2]  Nevertheless, there are "five traditional

theories under which a signatory to an arbitration agreement may bind a non-signatory[,]"

including "estoppel[,]" which is the one most relevant to the facts of this case.  Syl. Pt. 4,

in part, *Bayles v. Evans*, 243 W. Va. 31, 842 S.E.2d 235 (2020) (quoting Syl. Pt. 10,

*Chesapeake Appalachia, L.L.C. v. Hickman*, 236 W. Va. 421, 781 S.E.2d 198 (2015)).[3]  "A

nonsignatory is estopped from refusing to comply with an arbitration clause 'when it

receives a "direct benefit" from a contract containing an arbitration clause.'"  *Int'l Paper

Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000)

(quoting *American Bureau of Shipping v. Tencara Shipyard S.P.A.,* 170 F.3d 349, 353 (2d

Cir.1999)).  The logic for this rule is simple: "a nonsignatory who seeks to reap the benefits

of a contract must bear its burdens as well."  *Bayles*, 243 W. Va. at 41, 842 S.E.2d at 245.

As *Bayles* explains,

> "[d]irect-benefit estoppel involve[s] non-signatories who, during the life of the contract, *have embraced the contract* despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract." *Hellenic Inv. Fund, Inc. v. Det Norske Veritas,* 464 F.3d 514, 517-18 (5th Cir. 2006).  "A non-signatory can 'embrace' a contract containing an arbitration clause in two ways: (1) *by knowingly seeking and obtaining 'direct benefits' from that contract*; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract." *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620

---

[2] As the majority opinion correctly observes, Ms. Hoover did not have a power of attorney from her mother until days after she signed the Residency Agreement and the Arbitration Agreement. Moreover, the power of attorney subsequently granted to Ms. Hoover expressly excluded the ability to enter into arbitration agreements.

[3] The remaining four theories are "(1) incorporation by reference; (2) assumption; (3) agency; [and] (4) veil-piercing/alter ego[.]" *Id.*

> F.3d 469, 473 (5th Cir. 2010). When the nonsignatory knowingly exploits the contract containing the arbitration clause and obtains a direct benefit from that contract, "[c]ourts have applied direct benefits estoppel to bind a non-signatory to an arbitration agreement[.]" *Id.*

*Id.* at 41–42, 842 S.E.2d at 245–46 (emphasis and first alteration added).

In this case, the Estate admittedly seeks compensatory and punitive damages occasioned by Greystone's alleged statutory violations and negligence and does not appear to seek to enforce the Residency Agreement or assert claims that must be determined by reference to that document. However, I believe that Ms. Faw embraced the Residency Agreement and obtained benefits under such agreement by residing at Greystone.

The Residency Agreement functioned, for all intents and purposes, as a quasi-lease agreement between Greystone and Ms. Faw.[4] The Residency Agreement identified the apartment that Ms. Faw would occupy and provided that Greystone who would be responsible for utilities and maintenance of the apartment. In addition, the Residency Agreement stipulated the services—like housekeeping, meals, transportation, and nursing care—that Ms. Faw would receive. Perhaps most importantly, the Residency Agreement established the Monthly Rental Fee that Ms. Faw paid for her use of the apartment and receipt of services. Ultimately, and as the circuit court found, Ms. Faw "was provided with care and services under the terms of the Residency Agreement" for "the period of time that Ms. Faw resided at Greystone[.]"

---

[4] According to the Residency Agreement, it did not convey "the rights of a 'tenant' as that term is defined by state law."

**Arbitration Agreement.**

Because Ms. Faw "reap[ed] the benefits of" the Residency Agreement during her time as a resident, the Estate "must bear its burdens as well." *Bayles*, 243 W. Va. at 41, 842 S.E.2d at 245. Thus, the question becomes whether the Residency Agreement bound the Estate to submit its claims to arbitration, and I believe it did. The Residency Agreement expressly provides that the "Arbitration Agreement of even date herewith shall govern any and all disputes of the parties." The majority opinion attempts to avoid the significance of this language by pointing out that the Arbitration Agreement, which was contained in a separate document, states that its "execution . . . is not a precondition to the furnishing of services to the Resident by the Community" and that "this Arbitration Agreement may be rescinded by written notice to the Community from the Resident within 30 days of signature." Thus, according to the majority opinion, "Ms. Faw's acceptance of the benefits of the Residency Agreement [does not] equate[] to acceptance of the terms of the Arbitration Agreement[,]" and it cannot be said that "it is inequitable for Ms. Faw to have benefited from the Residency Agreement while permitting Administratrix Hoover to pursue the Estate's claims in court[.]" I disagree.

The Residency Agreement stated that the "Arbitration Agreement . . . shall *govern any and all disputes* of the parties." (Emphasis added.) Reading the two documents together—as we must[5]—I believe that it was possible for Ms. Faw or Ms. Hoover to refuse

---

[5] Syl. Pt. 2, in part, *Miller v. WesBanco Bank, Inc.*, 245 W. Va. 363, 859 S.E.2d 306 (2021) ("Separate written instruments will be construed together and

4

to be bound by the Arbitration Agreement by either (1) declining to execute it initially, in that the provision of services under the Residency Agreement was not contingent upon such execution, or (2) executing the Arbitration Agreement initially but also executing a written notice of rescission within thirty days. There is no indication that Ms. Faw or Ms. Hoover followed either such course.

The Residency Agreement provided that "any and all disputes of the parties" would be subject to arbitration in accordance with the terms and conditions set forth in the Arbitration Agreement. The majority is correct that the Arbitration Agreement states that the "execution of this Arbitration Agreement is not a precondition to the furnishing of services to the Resident by the Community." However, the key word is "execution." In other words, it is true that the Petitioners could not turn Ms. Faw away if she or her Responsible Party, Ms. Hoover, declined to execute the Arbitration Agreement. However, that is not what occurred here. Ms. Hoover signed both the Arbitration Agreement and the Residency Agreement (which referenced and incorporated the terms of the Arbitration Agreement) as Responsible Party. There is no indication that Ms. Faw or Ms. Hoover ever *rescinded* the Arbitration Agreement, and Ms. Faw benefitted from the residential and care services provided by Petitioners pursuant to the Residency Agreement. Accordingly, I believe Ms. Hoover is estopped from denying application of the Arbitration Agreement and the Estate is bound by the Arbitration Agreement. Indeed, I believe that the majority

---

considered to constitute one transaction where the parties and the subject matter are the same, and where there is clearly a relationship between the documents.").

5

opinion gives insufficient weight to the words "shall govern any and all disputes of the parties" from the Residency Agreement. Syl. Pt. 2, *Antero Res. Corp. v. Directional One Servs. Inc. USA*, No. 20-0965, 2022 WL 1055592, at *1 (W. Va. Apr. 8, 2022) ("'A contract must be considered as a whole, effect being given, if possible, to all parts of the instrument.' Syllabus, *Clayton v. Nicely*, 116 W. Va. 460, 182 S.E. 569 (1935)."). Accordingly, I respectfully dissent as to the issue of estoppel and would reverse the circuit court and remand this case for application of the Arbitration Agreement.